UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DAVID G. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:15-cv-0071-WTL-DKL |
| | ) |
| JEFFERY SMITH, | ) |
| | ) |
| Defendant. | ) |

**Entry Discussing Motions for Summary Judgment and
Directing Entry of Final Judgment**

Plaintiff David G. Taylor ("Mr. Taylor"), an inmate at the Wabash Valley Correctional Facility ("Wabash Valley"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that defendant Dr. Jeffery Smith ("Dr. Smith") was deliberately indifferent to his serious medical need in violation of the Eighth Amendment when he terminated Mr. Taylor's treatment for hepatitis C after Mr. Taylor tested positive for methamphetamines. Both parties move for summary judgment. For the reasons set forth below, the defendant's motion for summary judgment is **granted** and the plaintiff's motions for summary judgment are **denied**.

**I. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable

1

inferences in that party's favor."). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Fed. R. Civ. P*. 56(e)(2). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *Harney v. Speedway Super America, LLC*., 526 F.3d 1099, 1104 (7th Cir. 2008). The non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co*., 242 F.3d 713, 723 (7th Cir. 2001).

## II.  Statement of Material Facts Not in Dispute

### A. Evaluation and Treatment of Hepatitis C Virus.

Mr. Taylor was an inmate at the Wabash Valley at all times relevant to the allegations in the complaint. He alleges that Dr. Smith discontinued his treatment for hepatitis C ("HCV") in December of 2013 after Mr. Taylor tested positive for methamphetamines. The Indiana Department of Correction ("IDOC") restarted Mr. Taylor's HCV treatment on or about February 26, 2016. [Dkt. 53, at 2].

Mr. Taylor attached IDOC Health Care Directive 3.09 to his complaint and motion for summary judgment as evidence that he has received improper treatment for his HCV. [Dkt. 56-1].

IDOC Directive 3.09 is no longer the standard of care for treatment. Instead, the current standard of care for treatment of HCV is found in the HCV Treatment Guidelines ("Guidelines") promulgated by the Federal Bureau of Prisons ("BOP"). [Dkt. 58-3]. The Guidelines are used to prioritize patients for treatment and determine which treatments to provide. In July 2015, the

BOP revised its Guidelines to reflect the availability of new treatments and established a new standard of care. [Dkt. 58-1, ¶ 6; 58-3].

According to the Guidelines, testing for HCV infection is recommended for all sentenced inmates with risk factors for HCV infection, for all inmates with certain clinical conditions, and for inmates who request testing. [Dkt. 58-3, at 5]. Clinical conditions include testing for all inmates with a reported history of HCV infection. [Dkt. 58-3, at 6].

Cirrhosis is a condition of chronic liver disease. Progression of HCV infection to fibrosis and cirrhosis may take years to occur in some patients, or may not occur at all. Most complications from HCV infection occur in people with cirrhosis. [Dkt. 58-3, at 8].

The platelet ratio index ("APRI") score, which is a calculation based on results from two blood tests (the aspartate aminotransferase ("AST") and platelet count), is a less invasive and less expensive means of assessing fibrosis and cirrhosis than a liver biopsy. This test is irrelevant and unnecessary if the individual is known to have cirrhosis. [Dkt. 58-3, at 7]. An APRI score greater than 2.0 may be used to predict the presence of liver cirrhosis. Patients with APRI scores greater than 2.0 should have a liver ultrasound to evaluate the liver. [Dkt. 58-3, at 8-9].

Assessing hepatic compensation is important for determining the most appropriate HCV treatment regimen, and treatment may differ depending on the level of cirrhosis. [Dkt. 58-3, at 9]. The Guidelines provide that certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment. The patients at Level 1, or highest priority, are those with cirrhosis, liver transplant candidates or recipients, patients with hepatocellular carcinoma, those with comorbid medical conditions associated with HCV (such as renal disease), those taking immunosuppressant medications for a comorbid medical condition, and continuity of care for inmates already receiving treatment. [Dkt. 58-3, at p. 11]. Patients at

Level 2, or high priority, include those with APRI scores greater or equal to 2.0, those with advanced fibrosis on a liver biopsy, those with Hepatitis B and HIV coinfection, and those with comorbid liver disease. Patients at Level 3, or intermediate priority, include those with APRI scores between 1.5 and 2.0, those with Stage 2 fibrosis on a liver biopsy, those with diabetes mellitus, and those with porphyria cutanea tarda. Patients at Level 4, or routine priority, are those with Stage 0 to Stage 1 fibrosis on liver biopsy, and all other cases of HCV infection that meet the criteria for treatment. [Dkt. 58-3, at 12].

In addition to the above criteria, the Guidelines provide that patients being considered for treatment for HCV should also have no contraindications to any component of the treatment regimen, and demonstrate willingness and an ability to adhere to a rigorous treatment regimen and abstain from high-risk activities while incarcerated. [Dkt. 58-3, at 13]. The Guidelines currently recommend treatment with medications such as Harvoni and Viekira Pak. Monotherapy or dual therapy with pegylated interferon and/or ribavirin is no longer recommended. [Dkt. 58-3, at 14].

The Guidelines state that ongoing injection drug use or alcohol use is a contraindication to peginterferon drug therapy. Medical research suggests that methamphetamine compromises interferon alpha-mediated innate immunity against HCV infection, indicating that methamphetamine may have a cofactor role in the immunopathogenesis of HCV. In essence, methamphetamine compromises the body's immunities to HCV and enhances HCV replication. [Dkt. 58-1, ¶ 13; 58-3, at 25].

Periodic monitoring is recommended for all patients with active infection. [Dkt. 58-3, at 15]. For cases without advanced fibrosis, cirrhosis, or complications, periodic evaluation is appropriate. For patients with cirrhosis or significant comorbidities, evaluation is recommended at least every three to six months. In Indiana, inmates with chronic HCV infection are enrolled in the

Chronic Care Clinic ("CCC"), where clinical evaluation and laboratory testing are completed regularly, usually every three to six months. [Dkt. 58-1, ¶ 14].

### B. Mr. Taylor's Treatment for HCV.

Mr. Taylor began receiving triple drug therapy with Peginterferon, Ribavirin, and Boceprevir in June of 2013. [Dkt. 58-2, at 7]. On December 30, 2013, Mr. Taylor's HCV treatment was discontinued after he tested positive for methamphetamine. [Dkt. 58-2, at 16]. After Mr. Taylor's triple drug therapy was discontinued, he was still regularly monitored in the CCC and had frequent lab tests to evaluate his liver functioning during all of 2014. [Dkt. 58-2, at 21-34].

On March 5, 2015, his APRI score was less than 1, placing him at Level 4, or routine priority for treatment. At that time, he denied abdominal pain, bloating, edema, easy bruising/bleeding, changes in bowel habits, melena, hematochezia, rectal bleeding, jaundice, weight loss, or night sweats. [Dkt. 58-2, at 35].

On May 22, 2015, Mr. Taylor's APRI score had increased to over 1.0. [Dkt. 58-2, at 39]. On August 7, 2015, his APRI score had increased to 2.01. Mr. Taylor was told he would be prioritized for HCV treatment. [Dkt. 58-2, at 44-47].

On November 10, 2015, Mr. Taylor was stable and his APRI score had dropped to 1.758. He denied fatigue, myalgias, arthralgias, melena, hematochezia, and hematemesis. He continued to be monitored and have labs. [Dkt. 58-2, at 48]. Since his average APRI score since March 2015 was 2.016, an ultrasound of his liver/abdomen was ordered. [Dkt. 58-2, at 52]. On November 25, 2015, Mr. Taylor underwent an ultrasound, which showed no evidence of hepatocellular carcinoma and no evidence of cirrhosis. [Dkt. 58-2, at 57].

On December 8, 2015, Mr. Taylor saw his provider and discussed the ultrasound results. His APRI score was 1.758, but the ultrasound was "essentially normal." [Dkt. 58-2, at 58]. On

January 27, 2016, Mr. Taylor's APRI score increased to 2.28. [Dkt. 58-2, at 62]. On February 22, 2016, Mr. Taylor was seen in the CCC and counseled regarding restarting HCV treatment. His current APRI score was 1.758. [Dkt. 58-2, at 66].

On February 29, 2016, Mr. Taylor was again counseled regarding HCV treatment and completed a pre-treatment HCV checklist. [Dkt. 58-2, at 68]. The plan was to start Mr. Taylor on Harvoni and Ribavirin for 12 weeks. He signed an informed consent for treatment in which he again acknowledged that his treatment may be stopped if he injects drugs, gets tattoos, or participates in other behavior that could spread HCV. [Dkt. 58-2, at 76]. On April 11, 2016, after several weeks of treatment, Mr. Taylor's lab results showed his HCV RNA was less than 15. [Dkt. 58-2, at 79]. This result indicates the disease is not detected. [Dkt. 58-1, ¶ 23].

### III. Discussion

**A. Mr. Taylor's Declaration**.

Dr. Smith has moved to strike portions of Mr. Taylor's declaration in opposition to Dr. Smith's motion summary judgment. [Dkt. 64, ¶¶ 2-5, 10; dkt. 66, at 3]. Dr. Smith has challenged these statements arguing that they are either not based on personal knowledge or that they are medical opinions Mr. Taylor is not competent to make.

Federal Rule of Civil Procedure 56(c)(4) governs affidavits and declarations presented in support or opposition to a motion for summary judgment and requires that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts as would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." If the affiant is not testifying as an expert, the affiant's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to clearly understanding of the witness's

testimony or to determining of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 701." *Fed. R. Evid.* 701.

First, Mr. Taylor asserts that IDOC Directive 3.09 is the standard of care for treatment of HCV. [Dkt. 64, ¶ 2]. However, Mr. Taylor has no personal knowledge whether IDOC Directive 3.09 is current or outdated. As such, the assertions in paragraph 2 of Mr. Taylor's declaration are not competent evidence and will not be considered by the Court.

Next, Mr. Taylor asserts "alcohol or substance abuse is not an absolute contraindication to antiviral therapy once antiviral therapy has begun," "there are no medical reasons why antiviral therapy is stopped if a patient tests positive one time for drugs or alcohol," and the "termination of my HCV treatment has caused a biochemical deterioration of my liver, which is evidenced by increased bilirubin in my bloodstream. Since Smith terminated my HCV treatment I am experiencing chronic fatigue, poor stamina, inability to concentrate, join pain, muscle aches, chronic itching, digestive problems, and persistent headaches, all which are symptoms of HCV." [Dkt. 64, ¶ ¶ 4, 5, 10]. Each of these paragraphs involve scientific, technical, or specialized knowledge regarding HCV. Mr. Taylor is not testifying as an expert. Therefore his testimony may not be based on scientific, technical, or other specialized knowledge. *Fed. R. Evid.* 701. As such, the assertions in paragraphs 4, 5, and 10 of Mr. Taylor's declaration are not competent evidence and will not be considered by the Court.

### B. Eighth Amendment.

In his complaint, Mr. Taylor alleged Dr. Smith acted with deliberate indifference to Mr. Taylor's serious medical need when Dr. Smith terminated and would not resume, his treatment for HCV. Mr. Taylor also sought injunctive relief in the form of treatment for his HCV and money damages. His claim for injunctive relief is now moot as his treatment for HCV was reinstated in

February of 2016. Only his claim for money damages survives.

In support of his motion for summary judgment, Mr. Taylor argues that Dr. Smith was deliberately indifferent to his serious medical need when he discontinued Mr. Taylor's treatment for HCV after Mr. Taylor tested positive for methamphetamine on one occasion. Mr. Taylor relies on IDOC Directive 3.09 and his declarations [dkts. 56, 64] as evidence that he received improper treatment for his HCV. [Dkt. 56-1].[1]

In support of his motion for summary judgment, Dr. Smith argues he was not deliberately indifferent to Mr. Taylor's medical needs.

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement. This means that officials must take reasonable measures to protect the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

As to the first element, the objective prong requires that "the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (quoting *Cooper v. Casey*, 97 F.3d 914,

---

[1] Mr. Taylor submitted two declarations. The first, [dkt. 56], was in support of his motion for summary judgment. The second, [dkt. 64], was filed in opposition to Dr. Smith's motion for summary judgment. The declarations are similar in that they both contain assertions pertaining to scientific, technical, or specialized knowledge regarding HCV. However, Mr. Taylor is not testifying as an expert and is not permitted to make assertions based on scientific, technical, or other specialized knowledge. As such, paragraphs 7, 8, 9, 10 in the declaration found at docket 56 are not competent evidence and will not be considered by the Court. *Fed. R. Evid.* 701.

916 (7th Cir. 1996)). An objectively serious medical condition "is one that 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 452 (7th Cir. 2009) (quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). Serious conditions include those that significantly affect the person's daily activities, feature chronic and substantial pain, or could result in further significant injury or unnecessary pain if left untreated. *Gutierrez,* 111 F.3d at 1373.

As to the second element, "[t]o show deliberate indifference, [Mr. Taylor] must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009). This requirement is satisfied when a prison official "fail[s] to act despite his knowledge of a substantial risk of serious harm" to a prisoner. *Farmer,* 511 U.S. at 841. Dr. Smith does not dispute that HCV satisfies the first prong of the deliberate indifference analysis. [Dkt. 58, at 11]. The issue in dispute here is whether Dr. Smith was deliberately indifferent to Mr. Taylor's HCV.

With respect to the second element of a deliberate indifference claim, a court examines the totality of an inmate's medical care. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). Adequate medical care may involve care that the prisoner disagrees with; this disagreement alone is insufficient to establish an Eighth Amendment violation. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). To establish deliberate indifference, the prisoner must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *Id.* (quoting *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir. 2005)); or, stated another way, that the treatment decision "represents so significant a departure from accepted professional standards or practices that it calls into question whether the [medical professional] was actually exercising his professional judgment." *Id.* (citing *Roe v. Elyea,*

9

631 F.3d 843, 857 (7th Cir. 2011) and *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008)).

Mr. Taylor's drug therapy for HCV was discontinued in December of 2013 when he tested positive for methamphetamine. Although no longer the standard of care for treatment, IDOC Directive 3.09, on which Mr. Taylor relies in support of his claim for deliberate indifference, states "recent substance or alcohol use during incarceration" is an "absolute contraindication to antiviral therapy" and inmates with those contraindications "should not be treated with interferon and ribavirin as long as the contraindication exists." [Dkt. 1, at 4-5]. Similarly, the Guidelines state that ongoing injection drug use or alcohol use is a contraindication to peginterferon drug therapy, which is the type of drug therapy Mr. Taylor was receiving. Medical research suggests that methamphetamine use compromises the body's immunities to HCV and enhances HCV replication. [Dkt. 58-1, ¶ 13; dkt. 58-3, at 25]. Moreover, the Guidelines provide that patients being considered for HCV treatment should have no contraindications to any component of the treatment regimen, and must demonstrate a willingness and ability to adhere to a rigorous treatment regimen and abstain from high-risk activities while incarcerated. [Dkt. 58-3, at 12]. Therefore, the decision to discontinue Mr. Taylor's HCV drug therapy treatment was medically appropriate and was not deliberately indifferent.

Mr. Taylor argues that Dr. Smith discontinued his HCV medication because he tested positive for methamphetamine use, but not for any medical reason. There is no evidence that Dr. Smith's decision to discontinue Mr. Taylor's treatment was not medically sound. Rather, the Guidelines state that drug use is contraindicated with HCV drug therapy. Drug use can actually worsen a patient's condition by compromising the body's immunities to HCV and enhancing HCV replication. [Dkt. 58-1, ¶ 13; 58-3, at 25]. Mr. Taylor has not rebutted Dr. Smith's evidence showing the decision to discontinue his HCV treatment after he tested positive for

10

methamphetamine was not medically appropriate with any competent evidence. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (holding that a medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if his decision is "such a substantial departure from accepted professional judgment, practice, or standards" as to demonstrate that he did not actually base the decision on his medical judgment.). Based on the admissible evidence, Dr. Smith's decision to discontinue Mr. Taylor HCV treatment was medically appropriate. As such, Dr. Smith was not deliberately indifferent to a serious medical need when he discontinued Mr. Taylor's treatment for HCV after he tested positive for methamphetamine.

Mr. Taylor also argues that he suffered harm from the discontinuation of treatment. Mr. Taylor asserts the lab results show his HCV viral load and bilirubin levels increased as his HCV therapy was discontinued and the discontinuation of the HCV drug therapy caused him to experience chronic fatigue, poor stamina, inability to concentrate, joint pain, muscle aches, chronic itching, digestive problems, and persistent headaches. [Dkt. 56, ¶ 10]. However, Mr. Taylor has not submitted any medical or other expert evidence to support these claims and the assertions in his declaration that the discontinued use of HCV drug therapy caused him harm is not competent evidence.

When Mr. Taylor filed his complaint, he wanted medical treatment that he was not receiving. A dispute about his proper course of treatment does not state a claim of deliberate indifference. "Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care. [H]e is not entitled to the best care possible. [H]e is entitled to reasonable measures to meet a substantial risk of serious harm to her. The defendants have taken those measures." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

The evidence shows that from December of 2013 through February of 2016 when Mr. Taylor was not receiving drug therapy for his HVC, Dr. Smith took proper measures to closely monitor his HCV. More specifically, the undisputed evidence shows that Mr. Taylor was regularly monitored and had frequent lab tests to evaluate his liver function. [Dkt. 58-2]. Mr. Taylor was seen in the Clinic on March 5, 2015, and May 22, 2015, at which time he denied having any abdominal pain, bloating, edema, easy bruising/bleeding, change in bowel habits, melena, hematochezia, rectal bleeding, jaundice, weight loss, or night sweats. Mr. Taylor's test results did not indicate significant fibrosis for prioritization for treatment. Mr. Taylor's APRI score which is a key predictor of fibrosis and cirrhosis, remained below 1.5 until August of 2015, when it was 2.01. Soon after, his APRI score dropped to 1.758.

However, since his average APRI score since March of 2015 was 2.016, he had an ultrasound, which showed no cirrhosis, but remained a high priority for treatment due to his APRI score. On January 27, 2016, his APRI score increased to 2.28, so Mr. Taylor was counseled on HCV treatment and completed a pre-treatment HCV check-list. He then started the most updated treatment therapy, Harvoni and Ribavirin.

Dr. Smith has shown that the discontinuation of Mr. Taylor's HCV drug therapy after he tested positive for methamphetamine was medically sound. Dr. Smith has also shown that he continually monitored Mr. Taylor during the period of time he was not receiving HCV drug therapy and Mr. Taylor suffered no harm. Mr. Taylor has presented no competent evidence to dispute these facts. As such, Dr. Smith is entitled to summary judgment.

### III. Conclusion

For the foregoing reasons, Dr. Smith's motion for summary judgment [dkt. 57] is **granted**. Mr. Taylor's motions for summary judgment [dkts. 55, 60] are **denied**. Judgment consistent with

this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/22/17

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Jeb Adam Crandall
 BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Jeb Adam Crandall
BLEEKE  DILLON  CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

William Hackl Brainard
INDIANA ATTORNEY GENERAL
william.brainard@atg.in.gov

Caryn Nieman Szyper
OFFICE OF THE ATTORNEY GENERAL
caryn.szyper@atg.in.gov

DAVID G. TAYLOR
31700
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only